Ledos v. Kupfrian.

---

PAUL LEDOS

*v.*

GEORGE H. C. KUPFRIAN and others.

1. In a suit for foreclosure and sale of mortgaged premises, brought on a mortgage given for part of the purchase money, but not given until after the grantee had put another mortgage on the property, the

Ledos *v.* Kupfrian.

complainant set up, in the testimony and on the hearing, a claim to priority over the other mortgage, on the ground of vendor's lien. It appeared that the complainant's mortgage was the result of proceedings to enforce his vendor's lien, instituted after the giving of the other mortgage (of the existence of which mortgage, however, he was unaware). *Held,* that the complainant did not, under the circumstances, waive his vendor's lien by taking a mortgage for the unpaid purchase money.

2. It is not necessary, in order to establish a vendor's lien against a mortgagee of the premises whose mortgage was given by the grantee, that the mortgagee should have had notice of the existence of the lien when he took his mortgage; it is enough if he knew that the purchase money was unpaid.

3. The real question, the validity of the vendor's lien, having been litigated between the parties in the suit, an amendment would be allowed so as to present the question properly in the pleadings.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. F. W. Leonard,* for complainants.

*Mr. F. E. Bradner,* for defendant, Catharine Franz.

THE CHANCELLOR.

The complainant, on the 1st of October, 1872, by written contract between him and the defendant, Kupfrian, agreed to sell and convey to the latter his unexpired term and lease and privileges in and to certain leasehold premises in Market street, in the city of Newark, in this state, for the consideration of $16,000, of which $1,000 were to be payable on the 1st of November, 1872, $2,000 on the 1st of April, 1873, when the deed was to be delivered, and of the balance $2,000 were to be paid on the 1st of April, annually, for five consecutive years thereafter, and $3,000 on the 1st of April of the sixth year, with interest on so much of the purchase money as from time to time should remain unpaid. The agreement made no provision for securing the payment of the purchase money. It was duly acknowledged by the

Ledos *v.* Kupfrian.

parties, and was recorded in the register's office of Essex county, on the 2d of October, the day after its date.  Subsequently, the deed for the premises was executed and delivered by Ledos to Kupfrian.  It bears date the 1st of November, 1872, was acknowledged on the 2d of April following, and recorded on the 28th of August, 1873.  It declares that the consideration was $16,000, "to be paid and satisfied as follows, viz.: $1,000 the receipt whereof is hereby acknowledged; $2,000 on the 1st day of April, 1873, and for the balance $2,000 yearly, to be paid on the 1st day of April of each and every successive year, except the last year, upon the first day of April of which said last year the sum of $3,000 is to be paid."  On the execution of the agreement $1,000 of the purchase money were paid, and subsequently $2,000 more were paid on the same account, and $1,315 have been paid on account of interest.

Early in November, 1874, Ledos, having discovered that he had no security upon the premises for the unpaid purchase money, consulted counsel on the subject, and soon thereafter instituted suit in this court to declare and enforce his lien for it.  The subpœna to answer in that action was issued on the 14th of January, 1874, and due and legal service thereof was acknowledged on the next day.  On the 23d of December, 1873, Kupfrian mortgaged the premises to the defendant, Catharine Franz, to secure the payment of $1,800 and interest.  On the 26th of January, 1874, he executed and delivered to the complainant, in settlement of the suit above mentioned, a mortgage upon the premises to secure the payment of the unpaid balance of $13,000 of the purchase money and interest.

The bill claims priority for the complainant's mortgage, on the ground of notice to Catharine Franz, at the time of taking her mortgage, that a part of the purchase money agreed to be paid by Kupfrian to Ledos was unpaid.  This she, by her answer, denies, alleging that she was then assured that there was no encumbrance on the property, and that all the purchase money had been paid.

That the complainant, who is a foreigner, not having sufficient knowledge of our language to transact any business therein, supposed, when the agreement between him and Kupfrian was made, and his deed to the latter delivered, that he held a lien upon the premises for the unpaid balance of purchase money and interest, there is no room to doubt. The person who acted as interpreter for him testifies that in giving directions (which he did for both parties) to the scrivener who drew the agreement, he told the latter that Kupfrian was to secure Ledos by a bond and mortgage, and he directed the scrivener to draw such papers as the transaction might require. Both Ledos and his wife (the latter was also present at the making of the agreement) testify that it was agreed that the unpaid balance should be secured by mortgage on the property; and Kupfrian, while he denies that he agreed to give security for payment of the purchase money, says he did not suppose that Ledos had any security, "except the return of the property;" and he further says that he supposed that if he did not pay the money, Ledos could "foreclose and take the property back." He gave a mortgage, as before stated, in settlement of the suit in this court.

The counsel of Catharine Franz insists that she had no notice that any part of the purchase money was unpaid. The notice of *lis pendens* was on file when she took her mortgage, but it was not notice to her, for the subpœna had not been served. *Haughwout* v. *Murphy*, 7 *C. E. Gr.* 531. But she had constructive notice in the record of the agreement between Ledos and Kupfrian, and in the record of the deed from Ledos to Kupfrian, which latter expressly stated that part of the consideration money was unpaid, and in what instalments it was to be paid, and showed that of the purchase money, $13,000 were not yet due when she took her mortgage. It is not necessary that there should be notice that the indebtedness is a lien on the land. It is enough that there is notice that the money is not paid. *Brinkerhoff* v. *Van Sciven*, 3 *Gr. Ch.* 251; *Armstrong* v. *Ross*,

Ledos *v.* Kupfrian.

5 *C. E. Gr.* 109.  But, it is insisted that the taking of the mortgage by Ledos was a waiver of his lien.  It was just the reverse.  Had he taken it at any time before Catharine Franz took her mortgage, it would have been, as to her, an implied waiver, but when she took her mortgage he had no security whatever except his lien as vendor.  He had then set about establishing and enforcing his lien, and his proceedings to that end resulted in his subsequently obtaining the mortgage, not on a waiver of his lien, but for the establishment of it.  He appears to have had no actual notice of the existence of her mortgage ; and if he had, he might still have taken a mortgage from Kupfrian, instead of proceeding to a decree, leaving his claim for priority over her mortgage to a suit for foreclosure of his mortgage, in which their respective rights in the premises might be litigated.  Had he taken no mortgage, he might have maintained his claim of priority of lien for the unpaid purchase money over her mortgage, on the evidence which he has adduced in this suit.  Having obtained a mortgage in acknowledgment, so far as Kupfrian is concerned, of his lien for purchase money, he may, in this suit for foreclosure, claim such priority, and any necessary averments which may be wanting in the bill to enable the court to proceed to a decree in his favor, may be supplied by amendment.  *Armstrong* v. *Ross, ubi supra.*  The parties having fully litigated the question between them in this suit, the amendment would be merely formal.

There will be a decree for the complainant, establishing the priority of his mortgage over that of Catharine Franz.